IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JUDITH PINBOROUGH ZIMMERMAN, Ph.D.,<br><br>                              Plaintiff,<br>v.<br><br>UNIVERSITY OF UTAH, and DR. WILLIAM McMAHON, in his official and individual capacities,<br><br>                              Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART UNIVERSITY OF UTAH'S MOTION FOR SUMMARY JUDGMENT AND GRANTING UNIVERSITY OF UTAH'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2:13-cv-1131-JNP-BCW<br><br>District Judge Jill N. Parrish |

## INTRODUCTION

Dr. Judith Zimmerman brings this action against the University of Utah (the "University") and Dr. William McMahon. Defendants moved for summary judgment and the court heard oral argument on April 4, 2016. (Docket 46). At the conclusion of the hearing, the court took the motion under advisement. The University subsequently moved for judgment on the pleadings on Dr. Zimmerman's twelfth cause of action and that motion was fully briefed. (Docket 71). After considering the written submissions and the arguments presented at the hearing, the court issues this Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motions for Summary Judgment. (Dockets 46 & 71).[1]

The court holds that Defendants are entitled to summary judgment on Dr. Zimmerman's claims for deprivation of a protected property interest without due process. Similarly, Defendants are entitled to judgment on the pleadings for the claim of wrongful termination in violation of

---

[1] The court also notes that it reviewed Dr. Zimmerman's Notice of Supplemental Authority. (Docket 74).

Utah public policy. They have not, however, demonstrated that they are entitled to summary judgment on any other claims. Accordingly, the court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment and GRANTS Defendant's Motion for Judgment on the Pleadings. (Dockets 46 & 71).

## FACTS

As a preliminary matter, the court expresses concerns regarding the briefing in this case. The court's local rule requires a response to the opposing party's statement of facts as follows:

> If a fact is undisputed, so state. If a fact is disputed, so state and concisely describe and cite with particularity the evidence on which the . . . party relies to dispute the fact (without legal argument).

DuCivR 56-1(c)(2)(C). As is permitted by the court's local rule, Dr. Zimmerman's opposition memorandum includes a section entitled Additional Material Facts. In reply, the University does not address many of those facts individually. Rather, it makes a general argument purporting to dispute Dr. Zimmerman's characterizations and stating that many of the facts are immaterial. It then does not specifically address most of the facts included in the Additional Material Facts. Accordingly, the court deems those facts to have been admitted for purposes of this motion.

Additionally, the convoluted nature of the factual briefing is compounded by counsels' inappropriate commentary. Both parties respond to many of the facts with the word "undisputed" but then proceed to include paragraphs of argument, additional facts, and characterizations. This type of commentary is inappropriate. A party may not circumvent the page limits imposed on the argument section of a brief by including arguments in response to undisputed facts. Likewise, the local rules do not allow a party to add additional facts in response to a fact that is undisputed. Rather, counsel should include additional facts in the "Additional Facts" section contemplated by DuCivR 56-1(c)(2)(C).

      A.      Dr. Zimmerman's Employment with the University

Dr. Zimmerman is a speech-language pathologist who was heavily involved in autism research. Dr. Zimmerman entered into a contract with the University in 2008.[2] Pursuant to that contract, she was appointed as a Research Assistant Professor for a "renewable one-year term." The contract states that her appointment "will subsequently be renewed each year thereafter, contingent on [her] progress and the availability of funds, for successive terms of one (1) year unless either [she] or the University gives written notice to the other of its intent not to renew [her] appointment." The contract also states that "University policy for this is available at" the University's website. Dr. Zimmerman's employment contract was renewed annually until her termination in June of 2013.

Dr. Zimmerman's area of research was autism in Utah. Her research was conducted pursuant to a grant from the Center for Disease Control and Prevention (the "CDC"). In connection with her research, Dr. Zimmerman and her team collected data about pre-identified students from schools and medical facilities. The data included children's names, birthdates, characteristics that may represent autism, classifications of special education, and parents' names and addresses.

The CDC had set protocols for how this data was collected. It was also subject to HIPAA and FERPA regulations because the data contained private health and educational information. Additionally, because the research involved human subjects, the University required it to be approved by the Institutional Review Board. And individual researchers needed to get approval from the Utah Department of Health to use health data in a research study.

---

[2] Dr. Zimmerman purports to dispute this fact by stating that she began working for the University in 1987. But that does not actually dispute the fact that she entered into a contract with the University in 2008.

During the 2011-2012 academic year, Dr. Zimmerman passed the University's stringent reappointment process and was reappointed as a research assistant professor. On October 11, 2011, Dr. McMahon wrote a letter to the dean in which he "strongly support[ed Dr. Zimmerman's] retention as a Research Assistant Professor."

In August of 2012, Dr. Zimmerman reported to the University concerns she had regarding possible research misconduct and privacy violations. Dr. Zimmerman believed that confidential, identifiable data was illegally copied by a University employee. Dr. Zimmerman also alleged that the data was shared, in violation of confidentiality and privacy agreements, with individual researchers, including Dr. McMahon. Dr. Zimmerman was concerned that this also violated federal privacy laws. Additionally, Dr. Zimmerman reported to the University's legal department that she believed University employees were "double-dipping" because time spent on research for one group of researchers was being charged as time to another group of researchers.

During the December 2012-2013 academic year, Dr. Zimmerman was interested in transferring departments within the University so she would not have to work with Dr. McMahon. The University's College of Health held a faculty vote and approved giving Dr. Zimmerman a research assistant professor position within that department.

On December 12, 2012, Dr. McMahon delivered a letter to Dr. Zimmerman notifying her that her contract would not be renewed. Her employment with the University ended when her contract expired on June 30, 2013. Dr. Zimmerman served a Notice of Claim on October 25, 2013, and filed this action on December 27, 2013.

    B.    University Policy

During Dr. Zimmerman's employment, the University had extensive written policies regarding its employees. Policy 6-300, in relevant part, stated: "Appointments to 'research' positions are without significance for the achieving of or holding of tenure" and are subject to a

seven-year probationary period. The policy also stated four times that such appointments "end automatically each June 30."

Policy 6-302 stated that reappointment of auxiliary faculty must be voted on by the department's appointment advisory committee. It also provided that "[t]he chairperson of the department shall serve as chairperson of the committee but shall not vote on actions of the committee."

Policy 6-310 stated that "[a]ll faculty appointing units which appoint any auxiliary faculty . . . must develop and present for approval a Statement of academic unit rules that provide for procedures, criteria and standards for the evaluation and reappointment of each category of auxiliary faculty." That Statement "of appointing rules may distinguish between procedures followed for annual evaluations associated with annual reappointments, and those followed for more thorough reviews of long-serving auxiliary faculty." Additionally, each appointing unit must designate a committee or individual to evaluate auxiliary faculty for reappointment and make recommendations before committee members vote on reappointment or non-reappointment. "The procedures for making reappointments . . . [must] be consistent with University Policy 6-302."

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)). On a motion for summary judgment, the court "consider[s] the evidence

5

in the light most favorable to the non-moving party." *Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013) (quoting *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011)). However, "[w]hen the moving party has carried its burden, . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotations and citations omitted).

## ANALYSIS

**I.     Dr. Zimmerman did not have a protected property interest in her continued employment with the University. (Third and Fourth Causes of Action)**

Dr. Zimmerman alleges that she was deprived of a protected property interest without due process in violation of both the United States Constitution and the Utah Constitution. "To state a claim for a violation of due process, a plaintiff must first establish that [she] has a protected property interest and, second, that defendants' actions violated that interest. *Crown Point I, LLC v. Intermountain Rurlar Elec. Ass'n*, 319 F3d 1211 (10th Cir. 2003). In this case, the court need only address the first element because Dr. Zimmerman has failed to establish that she had a protected property interest.

A protected property interest exists only if there is a "'legitimate claim of entitlement' to some benefit created and defined by 'existing rules or understanding that stem from an independent source such as state law'" *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). A "mere 'abstract need or desire' or 'unilateral expectation'" is insufficient. *Teigen v. Renfrow*, 511 F.3d 1072 (2007). In the employment context, "[i]t is well established in this cirucuit . . .that procedural protections alone do not create a claim of entitlement to continued public employment. Rather, a legitimate claim of employment arises only when there are

6

substantive restrictions on the ability of the employer to terminate the employee." *Kingsford v. Salt Lake City School District*, 247 F.3d 1123 (10th Cir. 2001).

Dr. Zimmerman argues that she had a protected property interest in her employment that was created by University policy. She contends that University policy placed substantive restrictions on the University's ability to decline to renew her contract. She points to two specific policies: University Policy 6-310 and University Policy 6-302. Neither of these policies, however, placed any substantive restrictions on the University.

Policy 6-310 stated that "[a]ll faculty appointing units which appoint any auxiliary faculty . . . must develop and present for approval a Statement of academic unit rules that provide for procedures, criteria and standards for the evaluation and reappointment of each category of auxiliary faculty." That Statement "of appointing rules may distinguish between procedures followed for annual evaluations associated with annual reappointments, and those followed for more thorough reviews of long-serving auxiliary faculty." Additionally, each appointing unit must designate a committee or individual to evaluate auxiliary faculty for reappointment and make recommendations before committee members vote on reappointment or non-reappointment. "The procedures for making reappointments . . . [must] be consistent with University Policy 6-302."

Policy 6-302 stated that reappointment of auxiliary faculty must be voted on by the department's appointment advisory committee. The chairperson of the department was not permitted to vote.

Neither of these policies placed any *substantive* limitations on the University's discretion to decline to renew Dr. Zimmerman's contract. Dr. Zimmerman's argument appears to be that the University violated its policy by not establishing "unit rules" setting forth "procedures, criteria

and standards" as required by Policy 6-310.[3] But Policy 6-310 does not require that those procedures, criteria and standards include any substantive limitations. Similarly, Policy 6-302 establishes the procedures for reappointment, without creating any substantive restrictions. Accordingly, Dr. Zimmerman has failed to demonstrate that a genuine issue of material fact exists about whether she had a protected property interest in her continued employment, and Defendants are entitled to summary judgment these claims (her third and fourth cause of action).

## II. Defendants are not entitled to summary judgment on Dr. Zimmerman's claim for deprivation of a liberty interest. (Fifth and Sixth Causes of Action)

Dr. Zimmerman's fifth and sixth causes of action allege that she had a liberty interest in her reputation, and that the University impugned that reputation when it terminated her employment and allegedly publicly disclosed false statements. To succeed on a claim for deprivation of a liberty interest a plaintiff must show that the government entity "(1) makes a statement that 'impugn[s] the good name, reputation, honor, or integrity of the employee'; (2) the statement is false; (3) the statement is made during the course of termination *and* 'foreclose[s] other employment opportunities'; and (4) the statement is published, in other words disclosed publically." *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014) (quoting *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994)).

The University advances two arguments in support of its motion for summary judgment on this claim. First, it argues that the claim was not sufficiently pled in the Amended Complaint. Second, it argues that any statement the University made did not impugn Dr. Zimmerman's name, reputation, honor or integrity. The court will consider each argument in turn.

---

[3] Dr. Zimmerman asserts that "[t]he criteria and standards for Dr. Zimmerman's annual evaluation were never used" but she does not provide the court with any explanation of what criteria and standards were required.

The University first argues that Dr. Zimmerman failed to sufficiently plead her claim because she has not identified any statements that impugned her character and has not alleged that any such statements were publicly made. But the Amended Complaint alleges that the University "had the University Police present to lock Dr. Zimmerman out of her office and the department research area, and removed her access to any of her remaining grant and research files." She also alleges that the University informed other employees that, after her termination, she was not to be allowed on the premises. Finally, Dr. Zimmerman alleges that these actions were disclosed to the CDC. A reasonable jury could conclude that the University's statements in connection with its decision to call in the University Police if Dr. Zimmerman entered the premises implies that she was dishonest, criminal, or otherwise lacking in character. Thus, taking these allegations as true, Dr. Zimmerman has sufficiently pled that the University's statements impugned her character.

The University next argues that none of the statements upon which Dr. Zimmerman relies impugned her good name. Specifically, they argue that mere statements about unsatisfactory job performance are insufficient to impugn one's good name, reputation, honor, or integrity. But Dr. Zimmerman has testified to statements made by Defendants that regard much more than generally unsatisfactory job performance. Specifically, she testified that her colleagues were instructed to report her to the University Police if she was seen near the building after her termination. She also testified that the CDC was informed that "she persisted in her patterns of destructive behavior that hindered the growth and development of her fellow researchers and hindered the progress of the research." A reasonable jury could find that these statements, especially in connection with the use of University Police, do call Dr. Zimmerman's "good name and reputation into question." *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014).

Specifically, a reasonable jury could infer that the University's conduct implied that Dr. Zimmerman was dishonest, dangerous, or otherwise deserving of police monitoring and scrutiny. Accordingly, there are disputed facts on this issue and the University is not entitled to summary judgment on these claims (Dr. Zimmerman's fifth and sixth causes of action).

**III.     The University has governmental immunity against Dr. Zimmerman's claim for wrongful termination. (Twelfth Cause of Action)**

The University argues that Dr. Zimmerman's claim for wrongful termination in violation of Utah public policy is barred by the Utah Governmental Immunity Act. The Utah Governmental Immunity Act provides that "each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function" unless an express exclusion applies. Utah Code 63G-7-201(1).

The Utah Supreme Court has explained:

> Utah courts make three inquiries to determine whether the government is immune from suit under the Governmental Immunity Act. First, courts must ascertain whether the activity was a governmental function and thereby entitled to blanket immunity under the Act. Second, if the activity constituted a governmental function, courts must then look to see whether the State has waived immunity under another section of the Act. Finally, courts must determine whether there is an exception to the waiver of immunity that retains immunity against suit for the cause of action in the particular case.

*Wagner v. State*, 122 P.3d 599, 603 (Utah 2005).

Dr. Zimmerman does not dispute that the University is a governmental entity for purposes of the act. Likewise, she does not dispute that the University's actions constitute a "governmental function." She also admits that if her claim sounds in tort, then it is barred. But she disputes the classification of her a claim for wrongful termination of public policy as a tort. In *Peterson v. Browning*, the Utah Supreme Court expressly held that such a cause of action sounds in tort. 832 P.2d 1280, 1284. Dr. Zimmerman contends that the dissent in that case is more persuasive, and

10

that the *Peterson* case has unfortunate policy consequences. Regardless of whether this is true, this court is bound by the Utah Supreme Court's interpretation of Utah law. Accordingly, the claim sounds it tort and the University is immune. *See also Broadbent v. Bd. of Educ.*, 910 P.2d 1274, 1277 (Utah Ct. App. 1996) (holding that there is no waiver of governmental immunity for the tort of wrongful termination in violation of public policy).

Dr. Zimmerman advances one additional argument in support of her claim. She contends that the Utah Governmental Immunity Act does not bar claims for equitable relief. However, Dr. Zimmerman did not request equitable relief in this cause of action. Rather, she asserts that the University is liable "for all damages . . . including . . . lost wages, lost future wages, lost benefits, compensatory damages, and consequential damages, including attorneys' fees." She also seeks punitive damages. But nowhere in that cause of action does Dr. Zimmerman request any equitable relief. Accordingly, the University is immune from this claim (Dr. Zimmerman's twelfth cause of action) and is entitled to judgment on the pleadings.

## IV. Dr. Zimmerman's breach of contract claim is sufficiently pled and alleges specific facts. (Second Cause of Action)

The University next argues that Dr. Zimmerman's breach of contract claim "fails because she has failed to allege the minimum essential elements identified by the Utah Supreme Court." Under Tenth Circuit law, a plaintiff must plead both a viable legal theory and enough factual matter that, taken as true, makes the claim for relief plausible on its face. *Bryson*, 534 F.3d at 1286. The court must accept the "well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir.1996).

Under Utah law, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other

11

party, and (4) damages.'" *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 15 (quoting *Bair v. Axiom Design, L.L.C.*, 2001 UT 20 ¶ 14).

The Amended complaint meets these requirements by including the necessary allegations. The Amended Complaint asserts that the policies of the University were expressly incorporated into the contract, and that the University breached the contract by failing to follow its own policies. Specifically, the Amended Complaint alleges that the University violated its own policies by not requiring "a vote by the department's faculty appointments advisory committee or the department's auxiliary faculty" on the issue of Dr. Zimmerman's reappointment. Taking these allegations as true, Dr. Zimmerman has sufficiently pled a claim for breach of contract (her second cause of action). Accordingly, Defendants' motion to dismiss this claim is denied.

## V. Defendants are not entitled to summary judgment on Dr. Zimmerman's ADA claim. (Ninth Cause of Action)

Defendants next argue that they are entitled to summary judgment on Dr. Zimmerman's Americans with Disabilities Act ("ADA") claim for two reasons. First, Defendants argue that the Amended Complaint has not sufficiently alleged a claim for discriminatory termination under the ADA. Second, Defendants argue that the claim is time-barred. Each argument will be addressed in turn.

Defendants only argument as to the deficiency of the Amended Complaint is that "[n]owhere in her [Amended] Complaint does Plaintiff allege that the University perceived her as being unable to perform either a class of jobs or a broad range of jobs in various classes due to a perceived impairment." But the Amended Complaint alleges that "Dr. Zimmerman is an individual with a 'disability' as defined under the ADA because the University of Utah regarded Dr. Zimmerman as having a disability." Specifically, it alleges that "Dr. McMahon regarded Dr. Zimmerman as having one or more mental disorders, such as emotional or mental illness(es)."

Thus, Dr. Zimmerman sufficiently pled that the University and Dr. McMahon regarded her as disabled, and Defendants have not demonstrated that the claim should be dismissed. *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir.1996) (The court must accept the "well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.").

The only other argument the University advances regarding Dr. Zimmerman's ADA claim is that it is time-barred. For a claim under the ADA to be timely, the plaintiff "must have filed an administrative charge within 300 days of the challenged employment action." *See Proctor*, 502 F.3d at 1206; *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005) (holding that a plaintiff "must file a charge of discrimination . . . within 300 days of the alleged discrimination"); 42 U.S.C. § 12117 (applying the 300-day statute of limitations listed in 42 U.S.C. § 2000e–5(e) to ADA claims).

Dr. Zimmerman filed her charge of discrimination on June 6, 2013. Defendants argue that because Dr. Zimmerman relies on evidence that "took place in the 2005-2007 timeframe" to show that the University and Dr. McMahon regarded her as disabled, her claim is untimely. But this argument misunderstands the relevant statute of limitations. The 300 day period begins to run on the "day of the challenged employment action." *Proctor*, 502 F.3d at 1206. Dr. Zimmerman alleges that she suffered an adverse employment action on December 15, 2012. Specifically, she alleges that she "was wrongfully demoted, [her] staff was removed and [she] was informed that [her] contract would not be renewed." Her charge of discrimination was filed within 300 days of all of those employment actions. Nothing prevents a plaintiff from using older evidence to demonstrate that a recent adverse employment action was motivated by

discrimination. Accordingly, Defendants have not demonstrated that they are entitled to summary judgment on this claim (the ninth cause of action).

## VI. Defendants are not entitled to summary judgment on Dr. Zimmerman's religious discrimination claim. (Eleventh Cause of Action)

Defendants argue that Dr. Zimmerman has failed to establish a prima facie claim for religious discrimination under the burden-shifting framework of *McDonnell-Douglas v. Green.* 411 U.S. 792 (1973). The only argument they advance, however, is that the evidence of discrimination on which the Dr. Zimmerman relies is time-barred. They argue that the evidence of discrimination took place in 2008 and does not fall within the 300 days prior to the charge of discrimination. But this argument is based on the same misunderstanding of the 300 day limitation already discussed. The 300 day period begins to run on the "day of the challenged employment action." *Proctor*, 502 F.3d at 1206. Here, the challenged employment action took place in December of 2012. The charge of discrimination was filed within 300 days of that action. Accordingly, Defendants have not demonstrated that they are entitled to summary judgment on this claim (the eleventh cause of action).

## VII. Defendants are not entitled to summary judgment on Dr. Zimmerman's ADEA claim. (Tenth Cause of Action)

Defendants argue that they are entitled to summary judgment on Dr. Zimmerman's Age Discrimination in Employment Act ("ADEA") claim because she has failed to establish a prima facie case. Ordinarily, under Tenth Circuit law, a plaintiff may establish a prima facie case for age discrimination by showing that she "was (1) within the protected class of individuals 40 or older (2) performed satisfactory work; (3) terminated from employment; and (4) replaced by a younger person." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010).

Defendants' only argument is that Dr. Zimmerman has failed to establish that she performed satisfactory work. Defendants argue that the evidence they have presented regarding

14

Dr. Zimmerman's "performance issues" establishes that she was not satisfactorily performing her work. But there are disputed issues of material fact regarding Dr. Zimmerman's job performance. The court need not detail all the factual disputes with regard to Dr. Zimmerman's performance, rather, a few examples suffice to demonstrate that there are genuine issues of material fact sufficient to prevent summary judgment. *See* Fed. R. Civ. P. 56.

Dr. Zimmerman has presented evidence that during the 2011-2012 academic year, she was reappointed as a research professor. She also received a letter of recommendation to the Dean of the School of Medicine supporting her retention. And during the 2012-2013 academic year, the University's College of Health voted to approve giving Dr. Zimmerman a research assistant professor position. All of this evidences raises a genuine dispute regarding Dr. Zimmerman's work performance. Given the dispute over material facts, Defendants are not entitled to summary judgment on this claim (the tenth cause of action).

### VIII. There are disputed issues of material fact for Dr. Zimmerman's free speech claim under federal law. (Seventh Cause of Action)

Defendants argue that they are entitled to summary judgment on Dr. Zimmerman's claim for deprivation of her First Amendment rights. The Tenth Circuit follows a five-step approach to determine "whether the government employer has violated the employee's free speech rights." *Deutsch v. Jordan*, 618 F.3d 1093, 1097 (10th Cir. 2010). The first step "is for the court to 'determine whether the employee speaks pursuant to his official duties.'" *Id.* (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007)). The second step is for the court to "determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends." *Id.* (quoting *Brammer-Hoelter*, 492 F.3d at 1202–03.). The third step is for the court to determine "whether the employer's interest in commenting on the issue outweighs the intrest of the state as

employer." (quoting *Brammer-Hoelter*, 492 F.3d at 1202–03.). The fourth step is for the employee to "show that his speech was a substantial motivating factor in a detrimental employment decision." *Id.* Finally, "if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in absence of the protected speech." *Id.* The Tenth Circuit has also explained that generally, "the district court resolves the first three steps, and the last two are jury questions." *Id.*

In this case, Defendants' only argument is that Dr. Zimmerman's speech was not a matter of public concern. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). "[P]ublic concern is something that is a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004). "[W]hen 'determining whether speech pertains to a matter of public concern, the court may consider the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest.'" *Deutsch*, 618 F.3d at 1100 (quoting *Brammer-Hoelter*, 492 F.3d at 1205). "But the speaker's having a highly personal motive for disclosure does not necessarily mean that the speech is not a matter of public concern." *Id.*

Defendants argue that Dr. Zimmerman's speech was not a matter of public concern. Defendants highlight the fact that Dr. Zimmerman had expressed concern for her own legal liability in what she regarded as Dr. McMahon's illegal access to research data. Defendants also point out that Dr. Zimmerman's concerns were about her personal liability regarding some junior faculty members' failure to follow applicable data security and privacy agreements. But the fact that Dr. Zimmerman had a "highly personal motive for disclosure" is not dispositive. *Id.*

16

Dr. Zimmerman argues that much of her speech regarded matters of public concern. Dr. Zimmerman made various statements regarding what she believed was research misconduct with federal grants, other employees' alleged unauthorized access to identifiable health and education data, and failure to comply with federal grant requirements. She alleged that University employees were violating HIPAA and FERPA. All of these statements regard issues of public concern. The privacy of educational and health records is clearly a matter of public concern, as is evidenced by the existence of national privacy statutes like HIPAA and FERPA. Similarly, allegations of malfeasance concerning the use of federal grants are also matters of public concern. Accordingly, Defendants have not demonstrated that they are entitled to summary judgment on this claim (the seventh cause of action).

In its reply memorandum, the University includes a paragraph with a new argument in which it contends that even if Dr. Zimmerman's speech is a matter of public concern, her claim fails because the speech was made in her official capacity. The University cites to *Garcetti v. Ceballos*, for that proposition. 547 U.S. 410, 421–24 (2006). But neither that argument nor the supporting authority was raised before the reply memorandum. A party may not raise a completely novel legal argument in a reply memorandum and thereby deprive the opposing party an opportunity to respond. Accordingly, the court strikes section V(C) of the University's reply memorandum and does not address that argument.

IX.  **Dr. Zimmerman's free speech claim under the Utah Constitution presents an unsettled question of Utah law that will be certified to the Utah Supreme Court. (Eighth Cause of Action)**

Dr. Zimmerman also alleges that the University violated her free speech rights under the Utah Constitution. The parties disagree about whether such a claim is cognizable under Utah law. Because there is no Utah statute creating a cause of action for a violation of the Utah Constitution's Free Speech Clause, Dr. Zimmerman has a cognizable claim only if the Free

Speech Clause of the Utah Constitution is self-executing. *See Spackman v. Bd. of Educ. of Box Elder*, 16 P.3d 533 (Utah 2000). ("[A] self-executing constitutional clause is one that can be judicially enforced without implementing legislation."). Although the Utah Supreme Court has set forth factors to be considered in determining whether a particular clause is self-executing, there appears to be no controlling law applying those factors to Utah's Free Speech Clause. Given that this question is potentially dispositive of Dr. Zimmerman's free speech claim under the Utah Constitution and because it raises a novel issue of Utah law, the court will certify the question to the Utah Supreme Court.

**X.     The timeliness of Dr. Zimmerman's claim under the Utah Protection of Public Employees Act presents an unsettled question of Utah law that will be certified to the Utah Supreme Court. (First Cause of Action)**

The University argues that Dr. Zimmerman's claims under the Utah Protection of Public Employees Act ("UPPEA") are time-barred because she was notified that her contract would not be renewed on December 12, 2012, but did not bring this lawsuit until December 27, 2013. Dr. Zimmerman responds that the relevant adverse action did not take place until June 30, 2013, when her employment was actually terminated.

Defendants argue that the UPPEA statute of limitations began to run when Dr. Zimmerman received the December 2012 notice. Dr. Zimmerman responds that she suffered an adverse employment action in violation of the UPPEA when her employment ended on June 30, 2013, regardless of whether the December 2012 notice *also* constituted an adverse action. The UPPEA states that "'Adverse Action' means to discharge, threaten, or discriminate against an employee in a matter that affects the employee's employment, including compensation, terms, conditions, location, rights, immunities, promotions, or privileges." Utah Code § 67-21-2(2).

There does not appear to be any Utah law on point determining whether an employee suffers an adverse action when her employment is terminated or if the only adverse action occurs

18

when she is notified that her employment will be terminated. Given that this question is potentially dispositive and raises a novel issue of Utah law, the court will certify this question to the Utah Supreme Court.

## CONCLUSION

Defendants have demonstrated that they are entitled to summary judgment on Dr. Zimmerman's claims for deprivation of a protected property interest without due process (the third and fourth causes of action). Likewise, Defendants are entitled to judgment on the pleadings on Dr. Zimmerman's claim for wrongful termination in violation of Utah public policy (the twelfth cause of action). They have not, however, demonstrated that they are entitled to summary judgment on any other claims. Accordingly, the court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment and GRANTS Defendants' Motion for Judgment on the Pleadings. (Dockets 46 & 71).

Signed July 1, 2016.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge