# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JUDITH PINBOROUGH ZIMMERMAN, Ph.D., <br><br> Plaintiff, <br> v. <br><br> UNIVERSITY OF UTAH and WILLIAM McMAHON, Ph.D., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:13-CV-01131-JNP-BCW <br><br> District Judge Jill N. Parrish |

On November 20, 2015, the University of Utah and Dr. William McMahon filed a Motion for Summary Judgment (ECF No. 46). The court issued an order granting the motion in part and denying it in part on July 1, 2016 (ECF No. 75), but the court reserved judgment on two issues and certified those to the Utah Supreme Court (ECF No. 76). That court issued its opinion on January 23, 2018 and remitted to this court for final adjudication on March 13, 2018. And on May 4, 2018, the parties filed supplemental briefs (ECF Nos. 127, 128). Consequently, the court now considers the remainder of the defendants' 2015 motion and grants it in part and denies it in part.

## I. FACTS

Dr. Judith Pinborough Zimmerman is a speech-language pathologist who has been heavily involved in autism research.[1] In 2008, Dr. Zimmerman entered into an employment contract with the University. Pursuant to that contract, she was appointed as a research assistant

---

[1] The court recited the relevant facts in detail in its prior order. *See* ECF No. 75. Consequently, it presents only a summary here.

professor for a "renewable one-year term." The contract provided that Dr. Zimmerman's appointment "will subsequently be renewed each year thereafter, contingent on [her] progress and the availability of funds, for successive terms of one (1) year unless either [she] or the University gives written notice to the other of its intent not to renew [her] appointment." Dr. Zimmerman's employment contract was renewed annually until her termination in June 2013.

In August 2012, Dr. Zimmerman reported to the University concerns she had regarding possible misconduct and privacy violations. Specifically, she believed that confidential, identifiable data were illegally copied by a University employee and shared with individual researchers, including Dr. McMahon. Dr. Zimmerman also reported that University employees were "double-dipping" in reporting their research time.

On December 12, 2012, Dr. McMahon delivered a letter to Dr. Zimmerman notifying her that her contract would not be renewed. Consequently, her employment with the University ended when her contract expired on June 30, 2013. Dr. Zimmerman filed this action on December 27, 2013.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To do this, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When the nonmoving party bears the burden of proof at trial on a dispositive issue, that party must go "beyond the pleadings" and "designate specific facts" so as to "make a showing sufficient to establish the existence of an essential element to that party's case." *Celotex*, 477 U.S. at 322. "The plain language of Rule 56(c) mandates the entry of judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* Thus, summary judgment is not a "disfavored procedural shortcut" but rather "an integral part of the Federal Rules as a whole" that is designed "to secure the just, speedy and inexpensive determination of every action." *Id.* at 327.

## III. DISCUSSION

In the court's prior order on the instant motion, the court reserved judgment on two issues: Dr. Zimmerman's free speech claim under the Utah Constitution and Dr. Zimmerman's claim under the Utah Protection of Public Employees Act ("UPPEA"). It then certified questions pertaining to those issues to the Utah Supreme Court. Having received and reviewed that court's decision and the parties' supplemental briefing on these issues, the court now addresses each in turn.

### A. DR. ZIMMERMAN'S FREE SPEECH CLAIM

Dr. Zimmerman's fourth cause of action alleges that the University violated Dr. Zimmerman's free-speech rights under the Utah Constitution when it decided not to renew her appointment. Dr. Zimmerman's asserted free-speech right stems from Article I, Section 1 of the Utah Constitution. That section reads:

> All men have the inherent and inalienable right to enjoy and defend their lives and liberties; to acquire, possess and protect property; to worship according to the dictates of their consciences; to assemble peaceably, protest against wrongs, and petition for redress of grievances; to communicate freely their thoughts and opinions, being responsible for the abuse of that right.

Utah Const. art. I, § 1. And Article I, Section 15 provides, in part, that "[n]o law shall be passed to abridge or restrain the freedom of speech or of the press." Utah Const. art. I, § 15.

This court certified to the Utah Supreme Court two questions regarding Utah's free-speech clause: first, whether the clause is self-executing; and second, what elements must be established to state a claim under the clause. *See* ECF No. 76 at 1. However, the defendants abandoned their argument that the clause is not self-executing. And the Utah Supreme Court declined to identify the elements of a free-speech claim because the parties did not provide "the kind of adversary briefing that [the Court] would need to resolve these important issues with confidence." *See Zimmerman v. University of Utah*, 417 P.3d 78, 84 (Utah 2018). Consequently, this court is left to its own devices in considering Dr. Zimmerman's free-speech claim. Mercifully, the court need not consider the difficult question of whether the free-speech clause is self-executing, since the defendants have now conceded that it is. But the court must still consider (1) whether the common-law standard for a constitutional claim for money damages is satisfied, (2) the contours of a free-speech claim under the Utah Constitution, and (3) whether the defendants are entitled to summary judgment on Dr. Zimmerman's free-speech claim.

**1. Whether the Common-Law Standard for a Constitutional Claim is Satisfied**

In Utah, damage awards for constitutional violations are permitted only under appropriate circumstances. *Spackman ex rel. Spackman v. Bd. of Educ.*, 16 P.3d 533, 538 (Utah 2000). Accordingly, a plaintiff must establish three elements before she may proceed with a private suit for damages: (1) she must establish that she suffered a flagrant violation of her constitutional rights; (2) she must establish that existing remedies do not redress her injuries; and (3) she must establish that equitable relief was and is wholly inadequate to protect her rights or redress her injuries. *Id.* at 538–39.

When the defendants filed the instant motion in November 2015, they argued that Dr. Zimmerman's free-speech claim fails because Dr. Zimmerman cannot show a flagrant violation. *See* ECF No. 46 at 12. However, they did not argue that Dr. Zimmerman could not establish the second and third *Spackman* elements. Rather, they raised the second and third elements only in their reply brief. *See* ECF No. 59 at 9–10. But the local rules expressly prohibit raising in a reply brief matters not raised in an opposition memorandum. *See* DUCivR 7-1(b)(2); DUCivR 56-1(d). Thus, the defendants waived their right to argue that Dr. Zimmerman has not established the second and third *Spackman* elements.[2] Still, the court must consider the defendants' timely argument that Dr. Zimmerman has not established the first *Spackman* element: a flagrant violation of her constitutional rights.

A "flagrant" violation refers to a violation of "clearly established constitutional rights of which a reasonable person would have known." *Spackman*, 16 P.3d at 538 (internal quotation marks omitted). "To be considered clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotation marks and alterations omitted). The Utah Supreme Court has indicated that "it will be easier for a plaintiff to demonstrate a flagrant violation where precedent clearly establishes that the defendant's alleged conduct violates a provision of the constitution." *Jensen ex rel. Jensen v. Cunningham*, 250 P.3d 465, 482 (Utah 2011). However, there may be

---

[2] In supplemental briefing on this issue, the defendants argue that "Plaintiff could have filed a surreply and did not." ECF No. 142 at 8. They also contend that "Plaintiff is being given a chance to respond to the arguments now." *Id.* But neither argument is compelling. The defendants' untimely arguments raised in their reply brief violated the local rules. Consequently, the arguments were not properly before the court, and Dr. Zimmerman had no obligation to respond. Furthermore, that Dr. Zimmerman was required to address the issues pursuant to the court's order requesting supplemental briefing some two-and-a-half years later also has no bearing on whether the defendants waived their arguments.

"instances where a defendant's conduct will be so egregious and unreasonable that it constitutes a flagrant violation of a constitutional right even in the absence of controlling precedent." *Id.*

Here, Dr. Zimmerman does not attempt to cite precedent establishing that the University's alleged conduct violates a provision of the Utah Constitution. Nor does she argue that the University's conduct was so egregious and unreasonable that it constitutes a flagrant violation even absent controlling precedent. Instead, she simply argues:

> Because Article I, Section 15's prohibition on the restraint of free speech is nearly identical to the First Amendment's prohibition under federal law, the constitutional right is clearly established and a reasonable person would have known when s/he terminated Dr. Zimmerman for exercising her free speech rights, that s/he was violating clearly established constitutional rights.

That Article I, Section 15 and the First Amendment share significant similarities does nothing to show that the University's decision not to renew Dr. Zimmerman's appointment violates clearly established Utah law, nor does it establish the University's conduct as egregious or unreasonable. Consequently, Dr. Zimmerman has failed to establish that she suffered a flagrant violation, and she cannot proceed with a suit under the Utah constitution for money damages.

### 2. Elements of a Free-Speech Claim under the Utah Constitution

Although Dr. Zimmerman cannot proceed with a suit for money damages, she may still seek injunctive relief for free-speech violations. Thus, the court must identify the elements of a free-speech claim under the Utah Constitution and consider whether the defendants are entitled to summary judgment on that claim.

The parties present the court with a dichotomous choice. On one hand, the defendants urge the court to apply the same analysis to Dr. Zimmerman's Utah free-speech claim that it would to a claim arising under the free-speech clause of the United States Constitution. That analysis is called the "*Pickering* test" or the "*Garcetti/Pickering* analysis." *See Brammer-Hoelter*

6

*v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202 (10th Cir. 2007) (describing the "*Garcetti/Pickering*" analysis); *see also Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

On the other hand, Dr. Zimmerman asks the court to adopt the framework Utah courts have used in other wrongful termination cases involving employees who were terminated because they engaged in protected activities. She argues that "[w]hen an employer violates clear and substantial policies by firing an employee who exercises her right under the Constitution, the fired employee 'may maintain a wrongful termination action.'" ECF No. 128 at 11 (quoting *Ray v. Wal-Mart Stores, Inc.*, 359 P.3d 614, 636 (Utah 2015)).

Dr. Zimmerman's invitation to import wrongful termination law into the Utah free-speech clause is unpersuasive. She makes no attempt to relate her proposed analysis to the text of the Utah Constitution as it was understood when it was adopted in the late nineteenth century. *See Zimmerman*, 417 P.3d at 82 ("To establish the elements of a Utah free speech claim we would need to start, at a minimum, with a careful analysis of the text of the Utah Constitution, as understood when it was adopted in the late nineteenth century."). Furthermore, the allegations contained in Dr. Zimmerman's fourth cause of action track very closely the *Pickering* analysis, evincing Dr. Zimmerman's underlying assumption that the federal analysis—not a substituted wrongful termination claim—should actually apply. *See* ECF No. 120 at ¶¶ 76–80. Consequently, the court will consider Dr. Zimmerman's free-speech claim under the Utah constitution using the familiar *Pickering* analysis.[3]

### 3. Applying the *Pickering* Analysis to Dr. Zimmerman's Free-Speech Claim

The *Pickering* analysis is a framework for determining whether a public employee's speech is protected from employer retaliation. It consists of five steps:

---

[3] The court hastens to add that it applies the *Pickering* analysis here as the better of two unsavory options presented by the parties in cursory briefing.

7

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009). The first three steps are issues of law to be decided by the court, while the last two are factual issues to be decided by the factfinder. *Id.*

The defendants argue only the first step. They contend that Dr. Zimmerman's speech was made pursuant to her official duties. The court has already addressed this issue in a thorough written opinion granting summary judgment on Dr. Zimmerman's claim under the First Amendment to the United States Constitution. *See* ECF No. 115. It held that Dr. Zimmerman's communications were made pursuant to her official duties as a researcher and as director of the Utah Registry of Autism and Developmental Disabilities and that the First Amendment provided her no protection for any purported retaliation. *Id.* at 44. Because the court adopts the same analysis for evaluating claims under Article I, Section 15 of the Utah Constitution, the conclusion here is precisely the same: The Utah Constitution's free-speech clause does not protect Dr. Zimmerman from any purported retaliation.

### B. DR. ZIMMERMAN'S UPPEA CLAIM

Dr. Zimmerman's first cause of action alleges that the University violated the UPPEA when it terminated her employment. The UPPEA prohibits employers from taking adverse actions against employees who communicate waste, violations, mismanagement, abuse, or unethical conduct in good faith. *See* Utah Code Ann. § 67-21-3(1)(a). However, the UPPEA requires plaintiffs who are not legislative or judicial employees to bring actions "within 180 days after the occurrence of the alleged violation." *Id.* § 67-21-4(1)(c)(2).

Dr. Zimmerman received notice on December 12, 2012 that her appointment would not be renewed. Consequently, her contract expired on June 30, 2013. Dr. Zimmerman filed suit on December 27, 2018—380 days after receiving notice of termination but exactly 180 days after her contract expired. Thus, whether Dr. Zimmerman filed a timely UPPEA claim depends on whether the 180 days is measured from the date she received notice or from the date her employment terminated.

This distinction presented an unsettled issue of law, so the court certified this question to the Utah Supreme Court: "Does an employee who receives notice that his or her employment will be terminated effective on a future date suffer an adverse employment action for purposes of the [UPPEA] when he or she receives the notice, when the employment is actually terminated, or both?" ECF No. 76 at 1. The Utah Supreme Court's answer was: "either or both of these actions conceivably could be an 'adverse employment action' triggering the 180-day clock." *Zimmerman*, 417 P.3d at 85. However, that court noted:

> [T]he precise answer depends on whether and to what extent the employee is seeking damages arising out of one or the other of these actions (or both). To the extent an employee is seeking damages that arise from a notice of termination, a claim for those damages would be foreclosed by the failure to file within 180 days of the notice. To the extent an employee is seeking damages arising from the actual termination, on the other hand, a claim for those damages would not be foreclosed unless the employee fails to file a claim within 180 days of the actual termination.

*Id.* In short, to the extent Dr. Zimmerman seeks damages arising from the notice, her claim is barred. To the extent she seeks damages arising from the termination, her claim is timely.

The court finds that Dr. Zimmerman seeks at least some damages arising from her termination. Indeed, the first substantive sentence of Dr. Zimmerman's complaint identifies this action as "seeking redress for wrongful termination." ECF No. 120 at 1. Dr. Zimmerman's complaint alleges that she was wrongfully terminated, ECF No. 120 at 17, and that she seeks

9

payment of back wages and benefits, *id.* at 24, as is her right under the UPPEA. *See* Utah Code Ann. § 67-21-5(1). Consequently, Dr. Zimmerman seeks damages related to her wrongful termination, and to that extent her claim is timely.[4]

## IV. ORDER

For the reasons above, the defendants' motion is **GRANTED IN PART AND DENIED IN PART**. Specifically, the court orders as follows:

1. The court **GRANTS** summary judgment in favor of the defendants on Dr. Zimmerman's fourth cause of action (for violations of her free-speech rights).

2. The court **DENIES** summary judgment on Dr. Zimmerman's first cause of action for violations of the UPPEA. To the extent Dr. Zimmerman seeks damages from the notice of non-renewal, her UPPEA claim is **UNTIMELY**. To the extent Dr. Zimmerman seeks damages from her termination, her UPPEA claim is **TIMELY**.

Signed July 17, 2018

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[4] The court notes that because Dr. Zimmerman continued to receive wages and benefits through the date of her actual termination on June 30, 2013, she could not have suffered any lost wages or benefits prior to that date.