IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JUDITH PINBOROUGH ZIMMERMAN, Ph.D., <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSITY OF UTAH and WILLIAM McMAHON, Ph.D., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER RE: POST-TRIAL MOTIONS** <br><br><br> Case No. 2:13-CV-01131 <br><br> District Judge Jill N. Parrish |

Before the court are three motions filed after the court entered judgment on a jury verdict in favor of plaintiff Judith Pinborough Zimmerman, Ph.D. (ECF No. 245). Dr. Zimmerman brings a motion for attorney's fees (ECF No. 247) and a motion to amend the judgment to include prejudgment interest (ECF No. 250). Defendant University of Utah brings a motion for review of the Clerk's taxation of costs. (ECF No. 257). For the reasons below, Dr. Zimmerman's motion for attorney's fees is granted in part and denied in part, while her motion to amend the judgment is denied. The University's motion is denied.

## I.    BACKGROUND

Dr. Zimmerman initiated this lawsuit in December of 2013, asserting three causes of action under 42 U.S.C. § 1983 and five state law causes of action, all of which emanated from Dr. Zimmerman's employment with, and subsequent termination by, the University of Utah.[1]

---

[1] The complaint would be amended two subsequent times to add or remove claims and parties, but the scope of the events giving rise to the claims remained generally static throughout this litigation.

After the parties litigated multiple successive dispositive motions,[2] as well as certified questions before the Utah Supreme Court, the two remaining causes of action—one against the University and one against an individual defendant—were tried to a jury on August 20, 2018. On August 29, 2018, the jury returned a verdict against the University of Utah on Dr. Zimmerman's whistleblower claim brought under the Utah Protection of Public Employees Act (the "UPPEA"). Having found the University liable, the jury awarded Dr. Zimmerman $119,640 in compensatory damages in the form of lost wages. These timely post-trial motions followed.

## II. ANALYSIS

### A. DR. ZIMMERMAN'S MOTION FOR ATTORNEY'S FEES

Under the UPPEA, "[a] court shall award the complainant all or a portion of the costs of litigation, which are defined to include reasonable attorney fees and witness fees, if the court determines that the complainant prevails." Utah Code § 67-21-5(2). When, as here, a state statute ties the award of attorney's fees to the outcome of litigation, federal courts apply state law to resolve a fee request brought thereunder. *See Xlear v. Focus Nutrition, LLC*, 893 F.3d 1227, 1239 (10th Cir. 2018) ("Because a provision of the [state statute] awards attorneys' fees to the prevailing party—an outcome-based reason for awarding fees that is part and parcel of the state law cause of action—the [state statute] fee award statute is substantive, and state law controls the ability to award . . . fees . . . .").

---

[2] In general, the need for multiple dispositive motions arose from defendants' failure to assert potentially dispositive defenses—like sovereign immunity—in a timely manner. Having permitted one dispositive motion to be filed after the deadline for such motions had long-since elapsed—and striking portions of another—the court ordered defendants to show cause (ECF No. 175) why sanctions should not issue after they brought a motion in limine on the eve of trial containing more partially-dispositive arguments. Defendants responded to that order on August 17, 2018 (ECF No. 209) and more fully articulated the evidentiary basis for their arguments. The court finds their explanation reasonable and declines to issue sanctions.

By the terms of the statute, before awarding any fees the court must make a threshold finding that the complainant, Dr. Zimmerman, has prevailed. The Utah Supreme Court prescribes a number of factors to guide the prevailing party inquiry while directing trial courts not to "ignor[e] common sense when deciding which party prevailed." *See Neff v. Neff*, 247 P.3d 380, 388–89 (Utah 2011) (alteration in original). "These factors include the language of the contract or statute that forms the basis for the attorney fees award, the number of claims brought by the parties, the importance of each of the claims relative to the entire litigation, and the amounts awarded on each claim." *Id.* at 388.

Throughout the course of this protracted and complex litigation, the court has consistently perceived that the UPPEA claim—the first cause of action in each complaint—was of foremost importance. Though the other claims asserted by the three complaints were colorable, the UPPEA claim—which proscribes state-sanctioned retaliation for whistleblowing activities—best fit Dr. Zimmerman's factual allegations. The jury agreed, finding that Dr. Zimmerman proved the elements of that claim while rejecting the University's highly favorable justification defense (*i.e.*, the University could have defeated Dr. Zimmerman's winning UPPEA claim if it could establish, by the lesser "substantial evidence" standard, that the adverse action taken against Dr. Zimmerman was justified by reasons not related to her whistleblowing). The jury further found that Dr. Zimmerman had met her burden to prove both the fact of damages and the amount of damages flowing from the UPPEA claim, awarding her $119,640 in lost wages. Thus, the court finds that Dr. Zimmerman prevailed on her UPPEA claim.

Next, the court must determine whether the fees sought are reasonable. In making this determination, a trial court must consider (1) what legal work was actually performed; (2) how much of the work performed was reasonably necessary to adequately prosecute the matter; (3)

whether the attorney's billing rate is consistent with the rates customarily charged in the locality for similar services; and (4) whether there are circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility. *Dixie State Bank v. Bracken*, 764 P.2d 985, 990 (Utah 1988). Other factors that may be considered included "the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, . . . the amount involved in the case[3] and the results attained, and the expertise and experience of the attorneys involved." *Id.* at 989 (quoting *Cabrera v. Cottrell*, 694 P.2d 622, 625 (Utah 1983)).

### 1. What Legal Work was Actually Performed

The parties' primary dispute falls under this prong. The University points out that Dr. Zimmerman seeks a wholesale award of $266,421.50 without allocating the time spent by her attorneys to successful and unsuccessful claims, urging the court to deny fees entirely for this failure to allocate. Dr. Zimmerman responds that she is entitled to all her fees because each cause of action flowed from the same events. Neither position is correct.

The court finds that Dr. Zimmerman's fee affidavit is sufficiently detailed to remove it from the "wholesale" fee requests that courts have rightly denied. Specifically, the billing entries contain enough information to identify those entries that may form no part of the fee award and those that report work performed in connection with successful and unsuccessful claims.

The University submitted exhibits identifying billing entries that clearly relate to claims on which Dr. Zimmerman did not prevail. These entries largely report legal research and other tasks related to Dr. Zimmerman's unsuccessful federal claims and/or her state constitutional

---

[3] The Utah Supreme Court has cautioned that the amount in controversy should not play too great a role in this analysis because "[i]t is a simple fact in a lawyer's life that it takes about the same amount of time to collect a note in the amount of $1,000 as it takes to collect a note for $100,000." *Dixie State Bank*, 764 P.2d at 990.

claims.[4] The court agrees that these entries must be deducted from the award of attorney's fees, and will accordingly deduct $25,534.50 from the amount sought. *See* ECF No. 251 at Exs. A, B, and C.

After removing those entries that clearly correspond to claims for which attorney's fees are not available, $240,887 remains. But this number, undoubtedly, contains fees incurred in connection with losing claims for which the court must account in order to avoid a windfall to Dr. Zimmerman or her counsel.

For example, Dr. Zimmerman incurred fees in connection with this court's certification of three questions to the Utah Supreme Court. Two of those three questions related to Dr. Zimmerman's claim alleging violations of the First Amendment to the Utah Constitution—a claim on which she did not prevail—while the third question related to her UPPEA claim, on which she did prevail. Dr. Zimmerman's counsel reports roughly 25 hours spent drafting a brief to the Utah Supreme Court in connection with those certified questions. While counsel was under no duty to note precisely the amount of time spent drafting and editing portions of the brief pertaining to compensable claims and the amount of time spent on other portions, it would nevertheless be inequitable to award attorney's fees for all the hours expended in these and other like circumstances.

On the other hand, the number of causes of action brought by Dr. Zimmerman—thirteen over the course of the litigation—belies the fact that each of those causes of action emanated from substantially the same conduct and course of events. As a result, the work related to propounding and responding to requests for production of documents and interrogatories, as well as conducting and defending depositions, would have been largely similar even if she had

---

[4] The University also objects to entries reporting counsel's conversations with news media. Dr. Zimmerman concedes that these entries are not awardable.

asserted many fewer causes of action. Aside from the myriad discovery entries in Dr. Zimmerman's counsel's affidavit, a significant proportion of the billing entries relate to general litigation management (*e.g.*, communicating with opposing counsel and Dr. Zimmerman regarding various logistical matters). The vast majority of these entries would persist in a hypothetical case in which Dr. Zimmerman brought only her whistleblower claim. Finally, having presided over this trial, the court finds that little, if any, trial time would have been avoided if the only claim at trial were Dr. Zimmerman's whistleblower claim.

In each context discussed above, a competent lawyer must perform a core set of tasks whether they are seeking to recover under one or thirteen causes of action, especially when, as here, each cause of action is predicated on the same events. In short, it does not follow from the fact that Dr. Zimmerman prevailed on only one of thirteen claims asserted that she should be entitled to only 1/13th of the fees she requests.

This principle, however, holds to a lesser degree for work performed in connection with drafting pleadings and defending dispositive motions, some of which implicated complex legal issues related only to non-compensable claims. Much of this work was clearly identified as such and has already been deducted; removing those billing entries resulted in nearly a 10% reduction in fees. But of the entries remaining, approximately 10% of the fees requested are attributable to work performed in connection with drafting pleadings and litigating dispositive motions that related primarily to non-meritorious claims.[5] As a result, the court will apply a further 10%

---

[5] The court arrived at this figure by identifying the billing entries associated with pleadings, defendants' timely motion for summary judgment, defendants' motion for judgment on the pleadings, the certification of questions to the Utah Supreme Court, and defendants' 2018 motion for summary judgment (partly stricken by the court), and then roughly estimating—on the basis of the briefs—the proportion of the time reported that is attributable to non-compensable claims.

reduction to avoid awarding fees for work performed in connection with unsuccessful claims. Applying the 10% reduction to $240,887 results in an attorney's fee award of $216,798.30.

## 2. How Much of the Work Performed was Reasonably Necessary to Adequately Prosecute the Matter

In connection with this factor, the University objects to entries reporting phone calls with Dr. Zimmerman "with no further description." But the court does not believe that counsel needed to have detailed the matters discussed with her client during the course of a twelve-minute phone call. More importantly, the court does not find the number of entries reporting conversations with Dr. Zimmerman—or the cumulative time they represent—to be excessive.

Each of Dr. Zimmerman's attorneys appear to have exercised commendable billing judgment in this nearly five-year-long case. Having reviewed the affidavit in detail, the court finds that the type and amount of work performed was reasonably necessary to adequately prosecute the matter.

## 3. Whether the Attorneys' Billing Rates are Consistent with Rates Customarily Charged in the Locality for Similar Services.

The University does not argue that any of the lawyers' rates were excessive, and the court finds that Dr. Zimmerman's rate affidavits sufficiently establish that her lead counsel's rate— responsible for the lion's share of fees sought—is consistent with those customarily charged for employment law litigation in Utah.

Having considered the relevant factors,[6] the court finds that the attorney fees, as adjusted to $216,798.30, are reasonable, and will therefore be awarded to Dr. Zimmerman.

---

[6] The court cannot discern any "circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility." *See Dixie State Bank*, 764 P.2d at 990.

### B. Dr. Zimmerman's Motion to Amend Judgment to Include Prejudgment Interest

Next, Dr. Zimmerman brings a motion under Rule 59(e) of the Federal Rules of Civil Procedure to amend the judgment to include prejudgment interest in the amount of $21,274.29.[7] The University responds that under Utah law, prejudgment interest may not be awarded when, as here, "damage[s] figures must be determined by the trier of fact in its exercise of discretion." (ECF No. 254 at 2–3).

"[A]n award of prejudgment interest simply serves to compensate a party for the depreciating value of the amount owed over time and, as a corollary, deters parties from intentionally withholding an amount that is liquidated and owing." *Iron Head Const. Inc. v. Gurney*, 207 P.3d 1231, 1233 (Utah 2009) (quoting *Trail Mountain Coal Co. v. Utah Div. of State Lands & Forestry*, 921 P.2d 1365, 1370 (Utah 1996)) (alteration in original). Under Utah law, prejudgment interest is appropriate when "the injury and consequent damages are complete and [can] be ascertained as of a particular time and in accordance with fixed rules of evidence and known standards of value." *Id.* (quoting *Fell v. Union Pac. Ry.*, 88 P. 1003, 1007 (Utah 1907)) (alteration in original).

"Alternatively, prejudgment interest is not permissible in 'cases where the damages are incomplete and are peculiarly within the province of the jury to assess at the time of the trial.'" *Id.* (quoting *Fell*, 88 P. at 1006). "This includes cases in which the fact finder is left to 'determine the amount of damages from a mere description of the wrongs done or injuries inflicted.'" *Id.* (quoting *Smith v. Fairfax Realty, Inc.*, 82 P.3d 1064, 1070 (Utah 2003)).

---

[7] The parties agree that Utah law controls as to the availability of prejudgment interest. Dr. Zimmerman initially sought $55,984.96 in prejudgment interest under a misapprehension of Utah Code § 15-1-1(2). In her reply brief, she concedes her mistake, acknowledging that § 15-1-4 governs prejudgment interest in this case.

The court cannot find that there was ever a particular time in this dispute at which "the amount of the loss [could] be calculated with mathematical accuracy in accordance with well-established rules of damages." *See Bellon v. Malnar*, 808 P.2d 1089, 1097 (Utah 1991). Up to the point that the jury declined to award her them, Dr. Zimmerman sought noneconomic damages for emotional distress and pain and suffering—unliquidated damages that "are peculiarly within the province of the jury to assess at the time of the trial." *Fell*, 88 P. at 1106.

As to Dr. Zimmerman's request for lost wages, it was for the finder of fact to determine how long Dr. Zimmerman would have remained employed with the University but for its retaliatory adverse action. The jury was free to conclude that her contract would have been renewed annually for another five years, entitling her to more than half a million dollars in lost wages. Or the jury could have concluded that Dr. Zimmerman's contract would not have been renewed at the conclusion of the then-operative employment agreement. In short, this was a determination for the factfinder, and the jury's selection of a sum certain for Dr. Zimmerman's lost wages damages cannot be subjected to a hindsight analysis under which the jury's damages figure is deemed to have been complete and fixed at some earlier point in time. Thus, Dr. Zimmerman's motion to amend the judgment to include prejudgment interest is denied.

### C. THE UNIVERSITY OF UTAH'S MOTION FOR REVIEW OF THE CLERK'S TAXATION OF COSTS

Finally, the University moves the court to review the Clerk's taxation of costs under Rule 54(d)(1),[8] arguing (1) that costs incurred in connection with certain depositions pertained only to unsuccessful claims and should thus be disallowed; and (2) that the copying costs and some of the transcription costs should be reduced to account for the fact that Dr. Zimmerman prevailed under only one of the two claims that were tried.

---

[8] Taxable costs are detailed at 28 U.S.C. § 1920.

"[I]t is well established that Rule 54 creates a presumption that the district court will award costs to the prevailing party." *Cantrell v. IBEW Local 2021*, 69 F.3d 456, 458–59 (10th Cir. 1995). However, a court has discretion to deny costs when, among other reasons, "the prevailing party was only partially successful, when damages were only nominal, when costs were unreasonably high or unnecessary, when recovery was insignificant, or when the issues were close or difficult." *Zeran v. Diamond Broad., Inc.*, 203 F.3d 714, 722 (10th Cir. 2000).

As explained below, the University has not rebutted the presumption that the costs taxed by the Clerk should be allowed to Dr. Zimmerman.

### 1. The Deposition Transcripts were Reasonably Necessary to the Litigation

Under 28 U.S.C. § 1920(2), transcript fees are taxable as costs if they were "necessarily obtained for use in the case[.]"

> "Necessarily obtained" does not mean that the materials obtained added to the convenience of the parties or made the tasks of the trial judge easier, and the "most direct evidence of 'necessity' is the actual use of materials obtained by counsel or by the court." However, if materials are reasonably necessary for use in the case although not used at trial, the court is nonetheless empowered to find necessity and award costs.

*Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1340 (10th Cir. 1998) (quoting *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1245 (10th Cir. 1988)).

The University first objects to costs associated with the deposition of Krista Pickens on grounds that it probed topics related only to claims under which Dr. Zimmerman did not ultimately prevail. But in contrast to the award of attorney's fees, the reasonableness of costs is judged "in light of the facts known to the parties at the time the expenses were incurred." *Callicrate*, 139 F.3d at 1340.

Dr. Zimmerman has adequately explained why Ms. Pickens' deposition appeared reasonably necessary at the time it was taken. Indeed, Ms. Pickens was one of the University's

Rule 30(b)(6) designees, and there can be no argument that it would not have appeared reasonably necessary to depose the defendant itself. The transcription cost for Ms. Pickens' deposition will therefore be allowed.

Next, the University requests that the court reduce by half the transcription costs of eight other depositions because they did not exclusively address matters relevant to Dr. Zimmerman's UPPEA claim. The eight deponents were the most important figures in the events underlying this lawsuit, and the court cannot find that their depositions would not have appeared reasonably necessary at the time they were conducted. As such, those costs will be allowed in full.

### 2. Dr. Zimmerman's Partial Success does not Require that Costs be Reduced

The University also argues that the deposition transcripts costs and copying costs—which consist principally of copying costs incurred in preparation for trial—should be reduced by half to account for the fact that Dr. Zimmerman prevailed on one of two claims that were tried. For substantially the same reasons that the University's identical argument in connection with the motion for attorney's fees was unavailing, the court similarly finds it unpersuasive here.

Having resolved three motions for summary judgment and numerous pretrial evidentiary motions in addition to presiding over a seven-day trial in this matter, the court is very familiar with the exhibits and deposition testimony involved. The court finds that all or substantially all of the exhibits and deposition transcripts applied to both claims. As a result, the court denies the University's request to reduce these costs by half.

### III.    ORDER

For the reasons articulated, it is **ORDERED** that:

1. Dr. Zimmerman's Motion for Attorney's Fees (ECF No. 247) is **GRANTED IN PART AND DENIED IN PART.** Dr. Zimmerman is entitled to an attorney's fee award of $216,798.30.

2. Dr. Zimmerman's Motion to Amend Judgment to Include Prejudgment Interest (ECF No. 250) is **DENIED.**

3. The University of Utah's Motion for Review of the Clerk's Taxation of Costs (ECF No. 257) is **DENIED.**

Signed April 25, 2019

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge